DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Carla Valecko, appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that designated Mark Boling, appellee, the residential parent of the parties' minor child. This Court reverses and remands.
 I.
Brandon Boling is the minor son of Valecko and Boling. Valecko and Boling were never married, but the couple lived together for several years after Brandon was born. The two often argued and, according to Valecko, Boling became increasingly violent over time. On June 21, 1999, during an argument with Valecko, Boling hit Valecko, lifted her up off the floor by her head, and dropped her. Describing the incident at the custody hearing, Boling indicated that he merely "cupped" her under the chin and, because Valecko was "maybe 90 pounds wet," he could lift her easily. As a result of this incident, Boling was convicted of domestic violence.
Although Valecko and Boling initially reconciled, during February 2000, Valecko decided to end the relationship. Because, according to Valecko, Boling had threatened to kill her if she ever tried to leave with Brandon, she left with Brandon while Boling was at work. She left a note to Boling, indicating that she had gone to her mother's home in Florida, but Valecko actually went to a battered women's shelter near her mother's home. She remained in hiding until Boling took court action.
On February 24, 2000, Boling filed this action, seeking custody of Brandon. Valecko eventually returned to Ohio with Brandon but, while still in Florida, pursuant to the Uniform Child Custody Jurisdiction Act, she sought and obtained an ex parte civil protection order. The Florida order also granted her temporary custody of Brandon and provided for supervised visitation with Boling. After Valecko returned to Ohio, she obtained a second civil protection order in the Domesic Relations Division of the Summit County Court of Common Pleas. Valecko moved the juvenile court to transfer this case to the domestic relations division but that motion was denied.
A custody hearing commenced on December 18, 2000. At the beginning of the hearing, the solicitor of the Village of Silver Lake, Boling's former employer, appeared before the court seeking to quash Valecko's subpoena for all records pertaining to Boling. Among these documents were performance evaluations, a report by a fellow officer about an incident in which Boling got "out of control" during an arrest, letters regarding Boling's mood swings and other alleged incidents in which Boling displayed overly aggressive behavior on the job, letters concerning the disciplinary actions that resulted from these allegations, a mental health assessment performed in 1990 and two more assessments performed in 1999.
Valecko attempted to admit many of the items in Boling's personnel file as exhibits and to use them during her cross-examination of Boling. Boling raised no objection to the admission of this evidence. The trial court ruled that the documents could not be used for any purpose because they were privileged.
In addition to excluding the exhibits, the trial court repeatedly prevented Valecko from presenting testimony about Boling's character that did not directly relate to his relationship with Brandon or Valecko. Specifically, Valecko attempted to question Boling's father, Boling's former spouse, and a former coworker of Boling about Boling's anger management issues, but the trial court would not allow the questioning to continue. Most of this evidence was excluded because the trial court indicated that the evidence was not relevant to the issues before it. Valecko made a proffer of each witness' testimony, indicating each time that the witness would have testified about an incident or incidents in which Boling displayed anger, violence, or an inability to control his temper.
On February 6, 2001, the trial court issued its decision, granting residential custody of Brandon to Boling, while permitting Valecko standard visitation. The court seemed to weigh heavily the fact that Valecko expressed a desire to move back to Florida and that she took Brandon to Florida without informing Boling and that she prevented Boling from having any contact with Brandon until the court ordered her to do so. The trial court apparently placed little weight on the domestic violence conviction, noting that it was "an isolated act" that should not preclude Boling from being the custodial parent.
Valecko timely appeals, asserting seven assignments of error. The assignments of error will be rearranged for ease of review.
 II. FIRST ASSIGNMENT OF ERROR The matter was improperly referred to a visiting judge in violation of Rules of Superintendence 36 and Local Rules of Court 5, 6, 7 of the Summit County Common Pleas Court, Juvenile Division.
Valecko contends that the trial court improperly assigned this matter to a retired judge. This court need not reach the merits of this argument, however, because Valecko failed to preserve this issue for appellate review. It is well-established that:
 [a]ny party objecting to reassignment must raise that objection at the first opportunity to do so. If the party has knowledge of the transfer with sufficient time to object before the new judge takes any action, that party waives any objection to the transfer by failing to raise that issue on the record before action is taken.
White v. County of Summit (2000), 138 Ohio App.3d 116, 118, quotingBerger v. Berger (1981), 3 Ohio App.3d 125, 131.
The case was assigned to the retired judge on April 27, 2000. During the next eight months prior to the custody hearing, the retired judge signed numerous orders, which indicated that he was sitting by assignment; Valecko filed several motions that also indicated the name and status of the retired judge; and the parties appeared before this judge for several status review hearings. The record reveals that Valecko had ample notice and opportunity to object to the trial court's assignment of the case to the retired judge, yet she failed to do so. Consequently, she waived her right to raise this issue on appeal. The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR The trial court erred, as a matter of law, in denying Appellant's motion to transfer the matter to the Domestic Relations Division of the Summit County Common Pleas Court pursuant to § 2301.03(I)(1) (2) O.R.C.
Valecko contends that the juvenile court erred in failing to transfer this case to the domestic relations division because that court now has jurisdiction over these matters pursuant to R.C. 2301.03(I)(1) and (2). As amended effective June 14, 2000, those sections provide:
 (1) * * * Except in cases that are subject to the exclusive original jurisdiction of the juvenile court, the judges of the division of domestic relations shall have assigned to them and hear all cases pertaining to paternity, custody, visitation, child support, or the allocation of parental rights and responsibilities for the care of children and all post-decree proceedings arising from any case pertaining to any of those matters. The judges of the division of domestic relations shall have assigned to them and hear all proceedings under the uniform interstate family support act contained in Chapter 3115. of the Revised Code.
* * *
 (2) * * * Except in cases that are subject to the exclusive original jurisdiction of the juvenile court, the judge of the juvenile division shall not have jurisdiction or the power to hear, and shall not be assigned, any case pertaining to paternity, custody, visitation, child support, or the allocation of parental rights and responsibilities for the care of children or any post-decree proceeding arising from any case pertaining to any of those matters. The judge of the juvenile division shall not have jurisdiction or the power to hear, and shall not be assigned, any proceeding under the uniform interstate family support act contained in Chapter 3115. of the Revised Code. * * *
No one disputes that this case pertains to custody, child support, and the allocation of parental rights and responsibilities. Consequently, if the amended statute applies, this matter would fall within the exclusive jurisdiction of the domestic relations division. The dispute here is whether the amended version of R.C. 2301.03(I) applies to this custody action.
Although Valecko moved the juvenile court to transfer this case on October 13, 2000, after the effective date of the amendment, the case was filed and assigned to the retired judge prior to the amendment. The legislature included no language to indicate that this statute should have retroactive application. Therefore, it operates prospectively only. See R.C. 1.48.
The explicit language of the statute focuses on the point at which the case is "assigned" to the judge. The judges of the domestic relations division acquire power to hear and "shall be assigned" these types of cases, while the judges of the juvenile division lose power to hear and "shall not be assigned" these types of cases. Because this case had been assigned to the judge months before the effective date of the amendment, the former version of R.C. 2301.03(I) applied and the juvenile division had jurisdiction to hear this case. Therefore, the court did not err by denying Valecko's motion to transfer the case to the domestic relations division. The second assignment of error is overruled.
 SIXTH ASSIGNMENT OF ERROR The trial court erroneously applied the "best interest" of the child standard in making its determination. Inasmuch as Appellee has entered a consent decree naming the Appellant residential parent/legal custodian the trial court should have used the standard set forth in § 3109.04(E)(1)(a) O.R.C. which requires the retention of the previous designation absent: (i) the finding of a change of circumstance of the residential parent/legal custodian [of] the child which either occurred since the prior decree or were unknown at the time of the prior decree, (ii) that the modification is necessary to serve the child's best interests and (iii) one of the following apply: (a) residential parent consents to the change, (b) child has been integrated into the other parent's home with the consent of the residential parent, or (c) the harm likely to be caused by the change is outweighed by the advantages of the change.
Valecko asserts that the trial court erred in applying the best interest standard to this custody determination because this was not an initial determination of custody. She maintains that, because she had been granted temporary custody of Brandon by prior court order, the trial court should have treated this as a modification of custody rather than an initial determination. Consequently, according to Valecko, a change of circumstances was necessary to change her status as residential parent. See R.C. 3109.04(E)(1)(a).
Although there was a prior order of custody in this case, it was merely a temporary order. "When a court makes its permanent custody order, differences between it and the temporary order are not modifications pursuant to R.C. 3109.04[.]" Rowles v. Rowles (Apr. 29, 1988), Lake App. No. 12-064, unreported. It is only after the final judgment allocating parental rights and responsibilities that the court must comply with the statutory requirements for modification. See id. See, also, Spence v.Spence (1981), 2 Ohio App.3d 280. Consequently, the trial court did not err in applying the best interest standard. The sixth assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR The trial court erred, as a matter of law, in reviewing and considering the psychological reports contained [in] the "unofficial file" without compliance with Local Rule 13.01 and 16.03(C) and without any testimony being offered by any party concerning the reports.
 FIFTH ASSIGNMENT OF ERROR The trial court erred, as a matter of law, when it excluded from the introduction as documentary evidence the psychological reports contained in plaintiff's Silver Lake personnel file on the ground of privilege. Plaintiff waived his privilege by voluntarily submitting to the trial court an otherwise privileged report from Frederick G. Leidal, Psy. D. [sic] of CPI Professional Diagnostics.
 SEVENTH ASSIGNMENT OF ERROR The trial court abused its discretion to the prejudice of the Appellant in awarding Appellee custody of the minor child and in designating Appellee the residential parent/legal custodian. The trial court: (a) improperly considered matters not in evidence (psychological reports from the "unofficial file"), (b) did not weigh its own finding that the Appellee filed false affidavits in these proceedings, (c) did not weigh Appellee's conviction [of] criminal domestic violence against the Appellant, (d) interjected itself in the conduct of the trial by interrupting witnesses and refusing to allow them to fully answer questions, (e) did not make the statutorily required findings of fact regarding the allocation of parental rights to a convicted domestic violence offender, [and] (f) ignored the recommendation of the Guardian ad litem that both parents be awarded the allocation of residential parent/legal guardian.
This court will address the fourth, fifth, and seventh assignments of error together because they are related. Valecko contends that the trial court committed reversible error in its best interest determination because, among other things, it considered evidence that was not properly before it and it abused its discretion by refusing to admit certain evidence. This Court agrees.
 Boling's Behavior
The trial court refused to allow Valecko to question several witnesses, including Boling's father, his ex-wife, and a former coworker, about incidents in which Boling displayed his anger. The trial court also refused to allow Valecko to cross-examine Boling about any of these incidents or about any of the documents in his personnel file. The trial court's reasoning was that Boling's anger and behavior were not relevant except as they directed related to Brandon. This Court disagrees.
Valecko argued throughout the hearing that the evidence at issue was relevant to Boling's mental state and was also relevant to the domestic violence issue. In making its best interest determination, among the factors that the trial court was explicitly required to consider were the following:
 (e) The mental and physical health of all persons involved in the situation;
* * *
 (h) * * * whether either parent previously has been convicted of or pleaded guilty to [domestic violence] involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding * * *[.]
R.C. 3109.04(F)(1).
In considering these two factors, the trial court admitted no evidence of Boling's mental state and dismissed the domestic violence conviction as an "isolated act," because it had not allowed any evidence of Boling's anger management problems in other settings. Valecko had attempted to introduce many items of documentary and testimonial evidence that related to Boling's difficulty managing his anger in other situations. Valecko offered evidence that Boling had a history of an inability to appropriately manage his anger with his former wife and at his former job as a police officer with the Village of Silver Lake. Evidence that Boling had difficulty controlling his temper in a variety of situations clearly was relevant to his mental state and to establishing that the incident of domestic violence between Boling and Valecko was not an isolated act. The trial court abused its discretion by excluding this evidence on the basis of relevancy.
 Psychological and Psychiatric Reports
The trial court also excluded all documents in Boling's personnel file from when he was a police officer with the Village of Silver Lake. The documents included three mental health assessments, one performed by a psychiatrist and two performed by licensed psychologists. The trial court excluded these reports on the basis of privilege.
The statutory privileges relevant here are set forth in R.C. 4732.19
and R.C. 2317.02. R.C. 4732.19 provides that "[t]he confidential relations and communications between a licensed psychologist * * * and client are placed upon the same basis as those between physician and patient under division (B) of section 2317.02 of the Revised Code." Although R.C. 2317.02(B)(1) provides that communications between a physician and client are privileged, it further provides that the privilege does not apply in a civil action "[i]f * * * [the] * * * civil action * * * is filed by the patient[.]" R.C. 2317.02(B)(1)(a)(iii). Boling waived the statutory privilege by filing this civil action. SeeWhiteman v. Whiteman (June 26, 1995), Butler App. No. CA94-12-229, unreported (holding that privilege was waived by father's filing of a custody action).
The psychological and psychiatric reports were admissible under the privilege statute as long as they related "causally or historically to physical or mental injuries that are relevant to issues in the * * * civil action[.] R.C. 2317.02(B)(3)(a). The trial court should have proceeded to determine whether the psychological reports were related casually or historically to issues relevant to the custody proceeding. Because Boling'a mental state was a factor that the trial court was required to consider, the mental health assessments were causally related. Therefore, the trial court erred in excluding the psychological and psychiatric reports in Boling's personnel file on the basis of privilege.
Valecko further contends that the trial court erred in considering the psychological assessments of the parties that were part of the court's "unofficial file." The trial court states in its order that it did consider the reports, and that they indicated that neither parent suffers from any mental condition that would affect his or her parenting ability. This court cannot review that conclusion, however, because no such reports were even offered, much less admitted, into evidence at the hearing, nor do they appear anywhere in the trial court record. R.C.3109.04 contemplates that the trial court will "consider" the statutory best interest factors based on evidence that is presented at the hearing. See, e.g., Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 23. Because these reports are not part of the record, the trial court erred in considering them.
The exclusion of evidence about Boling's behavior, coupled with the court's exclusion of Boling's three mental health assessments and its consideration of evidence outside the record, constituted reversible error.
Valecko's fourth, fifth, and seventh assignments of error are sustained.
 THIRD ASSIGNMENT OF ERROR The trial court erred, as a matter of law, in failing to comply with the mandates of the Ohio Supreme Court case of Marker v. Grimm (Ohio 1992) 65 Ohio St.3d 139, 601 N.E.2d 496, and [R.C.] 3109.05 and 3113.215 which require the completion of a child support computation worksheet and the attachment of the same to the judgment entry of the court.
This Court need not address this assignment of error as it has been rendered moot by this court's disposition of the fourth, fifth, and seventh assignments of error. See App.R. 12(A)(1)(c).
 III.
Valecko's fourth, fifth, and seventh assignments of error are sustained. The judgment of the Summit County Court of Common Pleas, Juvenile Division is reversed and the cause remanded for further proceedings consistent with this decision.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellee.
Exceptions.
BAIRD, P.J.
WHITMORE, J. CONCUR